Thank you your honor. I believe your instructions were that if we had two attorneys or two parties on the same side that you would like to know how we would like to divide the time. I have ten minutes going for the Plaintiff Central Familiar. The United States has five minutes. I'm going to argue nine minutes if I can and I'd like to bet that I can keep one minute for rebuttal. So you've got ten, the government has five? Yes sir. Okay. We'll run it at ten. Do whatever you want on rebuttal. Thank you. May it please the court. Your honor, this is a case about the proper test to apply in an equal terms claim. The Religious Land Use and Institutionalized Persons Act, the equal terms provision says that no government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a non-religious assembly or institution. Counsel, let me ask you something about the details of this particular zoning before we get into the more general discussion. Can restaurants get liquor licenses so that they can serve wine and beer with dinner whether the church is there or not? Yes they can. And a hotel can have a dining room where it can serve wine and beer on the same block? Yes. Within 300 feet? Absolutely. Okay. Go ahead. The only thing the ordinance does is it really has the 300 foot rule applies to liquor stores and bars. That is only where liquor sales are taking place. I don't know quite what a bar is. There's an entertainment strip like this in, well, I'm thinking of one in Knoxville, Tennessee, where they have a bunch of bluegrass bars and people get a beer at one, listen to the bluegrass band and they walk across the street and do the same at another. Is that a bar or is that something else? I think if it's primary use is to liquor sales, if it exists primarily for that. Hard to say whether it's for liquor sales or cover charges on the bands. Hard to say, I could be wrong. Yeah, they make their money. That's right. Well, does this law apply to that sort of thing? I think it would if the primary sales were liquor sales and I think the music or the entertainment in that context may be to draw people in for liquor sales. And it might be important to note at this point too that it doesn't apply to pre-existing uses either. So if a church comes to the zone, it can't displace or push out a pre-existing bar or liquor store. So if a church moves in between a liquor store and a bar, the liquor store and the bar can keep doing business? That's right. That's right. Your Honor, the two tests, what this case is about is whether or not the plain terms text or test that's been adopted by the 11th Circuit and the 7th Circuit should be applied to determine whether or not a religious assembly, in this case the church has been treated on less than equal terms as non-religious assemblies. That's in opposition to the 3rd Circuit. Yes, we do have a circuit split here that applies an extra textual test where the 3rd Circuit really drafted and then grafted in a test that we shall see and we shall see whether or not the church has been treated on less than equal terms as non-religious assemblies. And that test requires that in order to prevail, the church has to show that it's similarly situated with respect to the regulatory purpose of the zone. Are you talking about the Lighthouse? That's correct. Isn't that pretty similar to the straight First Prudence where the court's job is to identify the classes, the favored and disfavored classes, and then you apply the test to determine whether or not they're similarly situated with respect to the purpose of the statute. But the equal terms provision is very different. Congress made specific findings that there was pervasive and widespread discrimination nationwide against churches in land use planning. And the particular evil they were concerned about is that municipalities would routinely cloak their purposeful discrimination in keeping churches out of particular zones where there were other non-religious assemblies. They would cloak them in regulatory purposes. So if you look at the equal terms provision, the way it's different from equal protection analysis is that Congress has predetermined the classes. This isn't an exercise that the court has to do to see who the classes are, but the Congress has said that religious assemblies and non-religious assemblies are similarly situated with respect to land use goals. But you tell me, do we actually have to decide between the Seventh Circuit and the Third Circuit? Is that the case, or do you have any argument you could make that you'd prevail even if you were in the Third Circuit? Your Honor, we think it's difficult, given the broad ‑‑ the breadth of the Third Circuit's test. We think it's an extra‑textual test that really ‑‑ really takes the protective bite out of the statute that Congress intended. I think it would be very difficult for us to prevail. The purpose is to create an entertainment district. I assume that means a place where people can enjoy going in the late afternoon and at night. Maybe hotel guests going out for dinner and then having a drink somewhere. I don't know. Maybe like Old Town and Pasadena. Could you take me through the ordinance here and explain why you lose in the Third Circuit but you win in the Seventh Circuit? This is why. To me, it's as though if I accepted your argument, you might win in both and we're saved the risk of making law that may be wrong. Your Honor, I think you're responding to this case in the way that I did when I first looked at the case. Because if you look at religious assemblies and churches, I mean, you can certainly make as a practical argument that there is a ‑‑ that it has an entertainment sense to it. I mean, many churches have concerts and they ‑‑ and so forth. And the people certainly go down to church and afterwards they go to movies and they ‑‑ Actually, that wasn't quite my thinking. I'm sorry. What I was thinking was the purpose here is to have an entertainment district. But they're not requiring everybody to be some sort of entertainment facility. So it doesn't really matter if there's a building on the strip. It's not an entertainment building. They allow post office. They allow a bus terminal. All without conditional use permits. And, gosh, a post office is pretty dead at night. And they allow a bank. Yes. I think I now understand ‑‑ I understand why you'd lose even under the Third Circuit if we accepted your argument. I understand your precise question now. It's because of this. Because under Lighthouse and especially the district court's version of it, it doesn't ask ‑‑ it allows cities to exclude churches even if they look like other uses in the area. And it allows them to do this by identifying any way in which a religious assembly or a church would be inconsistent with the regulatory purpose. And so even though the church may be no less detrimental or harmful in comparison to many of the uses, for example, the post office that are down there, that's okay. You can still exclude the churches if you can identify any other independent or unique way that it would be more harmful to the regulatory purpose. And in this case, the district court did some post hoc thinking for the city on this and identified two ways. They said, well, we think or the court said churches might birth more accessory uses than religious assemblies and other uses down there. And also because the application of the Arizona booze buffer zone, which means, you know, these liquor stores and bars cannot locate within 300 feet of a religious assembly or school, because of those two reasons, those two reasons uniquely make religious assemblies like churches inconsistent with the regulatory purpose. So a post office wouldn't do that. It wouldn't trigger the adoption of the buffer zone and under the district court's thinking, although this certainly wasn't proven on the record, post offices are less likely to have accessory uses. So that's why it would be good to have a buffer zone, but it would be very difficult for us to prevail under the White House test. Really, they're unidentified on the record, I believe. I suppose you could say, well, religious organizations, some of them start hospitals. So the concern here would be, well, if they located down on Main Street, who knows, maybe sometime in the future this 200-member church might start a hospital. So because of these kinds of accessory uses, we can treat them differently from nonreligious assemblies, because even though performing arts centers, which function largely like church congregations and even the multiplex cinema that's allowed there, and of course that's allowed expressly by the code too, even though they are assemblies, the district court concluded, we think they're less likely to birth accessory uses. Well, here's one of the problems with that. Here's the biggest problem with it, really. Under the equal terms provision, you're allowed to treat them equally. So if you have a concern that churches might have more accessory uses or might birth more accessory uses in the future, then all you need is a religiously neutral term that says, if you're going to have an accessory use here, you need to apply for a CUP. And as long as that's applied even-handedly to religious and nonreligious assemblies, you don't violate our LUPA. That's the way you solve the problem under the equality principle. Thank you, counsel. Can I ask a question? I know the time's up, but answer this question for me. I have this unique, but the human ordinance makes this classification in terms of the SIC, right? And so does that mean we're bound by the SIC and, you know, making the comparison between classes and equal terms? Or in other words, can we look outside the SIC in this sense? For instance, I would say schools don't come under that general SIC, do they? No. No. But to me, they're very comparable to churches. Now, this ordinance, you know, doesn't give the same right to schools as it does to, say, membership organizations, nonreligious membership organizations. Now, can we use that to save the ordinance? No, you can't, because really what the – Judge Posner addressed this in DeGrugier's case, and he said, look, maybe what you find is the city throws in school to look as if it's doling out evenhanded treatment. But really, it's not doing that at all. In other words, by treating religious assemblies and schools the same, it's kind of like saying, well, we can discriminate against blacks because we discriminate against Asians, too. No. The point is you have to treat all people the same. Under the equal terms provision of our LUPA, you have to treat all assemblies the same. And no, we are not bound by the ISC's definition of religious organization and religious assemblies. We're bound by Congress's definition of assemblies. And religious assemblies and nonreligious assemblies have to be treated on equal terms. This doesn't give religious assemblies special rights. They can be regulated by terms that apply across the board to nonreligious assemblies, but those regulations need to be religiously neutral. The Yuma ordinance is the worst nonneutral ordinance you're ever going to find. It specifically says you can come into this zone as of right if you're a membership organization, if you're a nonreligious assembly. It's in parentheses that it says, except religious organizations. And then the district court realizing that, well, that's a real problem under the equal terms provision, I'd better craft a new test. We review de novo, don't we? Yes, you do. You review de novo. We really have to, we can't defer to the district court, so we really don't have to decide whether the district court got all the theory right. Now, I just wanted to demonstrate the absurdity of the district court's finding. Thank you, counsel. Thank you. Counsel. May it please the court, Christopher Wang, appearing on behalf of the United States as amicus curiae supporting appellants. The city of Yuma zoning code in this case is a prototypical violation of our LUPA's equal terms provision. The zoning code allows secular membership organizations to operate in the Old Town District as of right, but requires religious membership organizations to obtain a conditional use permit to so operate. The zoning code thus subjects religious membership organizations to lesser treatment based solely on their religious nature. The district court recognized that the zoning code's differential treatment of secular and religious membership organizations constituted prima facie evidence of an equal terms violation, shifting the burden to the city to show that religious membership organizations were more likely than their secular counterparts to interfere with the city's legitimate land use interests in the Old Town District. District court erred, however, in concluding that the city carried its burden. Just to go back to the question, did the district court, in essence, apply that lighthouse test? The district court did apply the lighthouse test, Your Honor, and we believe. Obviously, the DOJ disagrees with that. We do disagree, Your Honor. We believe the proper test was set forth by Judge Posner in the DeGugier opinion when he when he said that you look at whether the secular organization is comparable. I think similarly situated has some baggage associated with being associated with the equal protection cases, as Judge Jordan noted in his lighthouse dissent. And comparable is a better standard for two reasons. Number one, it indicates that two organizations, a religious and a secular organization, need only be comparable in the effect it has on the government's legitimate land use interests. It doesn't have to be comparable in all respects. Number two is that there can be more than one secular comparator for a religious organization. Going back to your question, Judge Tashima, about schools and churches, yes, schools are comparable to churches, but that's pretty much irrelevant for our analysis. So long as you have a secular organization that is comparable to a church with regard to the I think they also put educational uses into the conditional use permit category in this ordinance. That's correct, Your Honor. Tell me, do you have any different answer from your colleague on whether we really need to decide between the Seventh and the Third Circuit in this case? I was struck by the breadth of what did not need a conditional use permit. I think even jails have a right to locate in the entertainment district. It says here correction centers. I think that means jails. Yes, Your Honor. Membership organizations, including trade associations, labor unions, political organizations. Yes, they are allowed. You probably can't tell the difference unless they pull out those hidden Bibles. But I was wondering, I'm trying to figure out what purpose the entertainment center zoning could serve that would exclude churches, but not jails and post offices and banks. And I'm thinking if I can't think of one, then you win under the Third Circuit as well as the Seventh Circuit. So we avoid a legal decision that invites error. Well, Your Honor, the United States' position is that this discrimination against religious organizations is so patent that it would fail under either the Third or the Seventh or the Eleventh Circuit test. I think what the district court, the city argued and the district court agreed is that these religious organizations are different from organizations such as trade associations, labor unions, even jails. I will tell you my concern here. I have the feeling that we are being pushed to establish some law by people that would like us to establish some law. But it's always better judicial practice not to if you don't have to. Well, Your Honor, we believe if you accept the argument that the city cannot use the state liquor law or stereotypes that religious organizations tend to engage in accessory uses, if you can't use those as means to differentiate churches from trade associations, labor unions from political organizations, then basically you've got two organizations that are comparable in all relevant respect with regard to the effect on the purpose of the Old Town District, which is to create a lot of... What is the church due to interfere with entertainment other than have its frontage blank for people walking by looking for fun at night? Well, according to the city and the district court accepted it, the city cannot, the state cannot issue liquor, new liquor licenses within 300 feet of a church due to state law and therefore... Well, if it's lighted one-third of the entertainment district as far as restaurants and that sort of thing, hotel and restaurant, then I can see where church is something special. And I really don't agree with the Seventh Circuit view that the state and the municipal government should be regarded as one. But here, if liquor licenses can be issued for the hotel coffee shop and the hotel dining room and the chi-chi restaurants that might locate in an entertainment district, I don't see why the church is anything special. Your Honor, we would agree. And it appears my time is up. Just to make one final point is that the city can't use state law to attribute certain qualities to a church and then turn around and say entities with this particular quality cannot locate  Thank you, Your Honor. Thank you, counsel. Counsel? Good morning, Your Honor. May it please the Court and counsel, my name is Ron Messerly appearing on behalf of the city of Yuma. I guess, first of all, I'd like to address a couple of the issues that were raised in counsel's argument and a couple of the questions that the Court asked.     I'm a member of the City of Yuma's Council of the Arts and Sciences. I have a question that is really important to me. I'll slow down. I don't know if it will sound important to you. I thought the city had a real good case if the church was going to blight the entertainment district by preventing hotels and restaurants from getting liquor licenses. One-third of the entertainment district would be gone as well as the big hotel. But as I understand it from your adversaries and from my initial reading of the ordinance, restaurant can get a liquor license to serve beer and wine with dinner and the hotel can get liquor licenses for its coffee shop and restaurant. The only people that can't get the licenses they need are just plain bars and liquor stores. And I can't see where that would blight the entertainment district. Liquor stores would ordinarily be closed at night. And as for bars, well, I suppose the old bars can stay. New bars are barred. But I don't understand what purpose it is at issue. Well, I guess there are. Is it true that restaurants can get liquor licenses? There are certain liquor licenses that are issued to restaurants, and the statute refers to those. There are certain liquor licenses that are issued to hotels. But everything else is excluded. The way the statute is written is that everything that sells liquor has this 300-foot buffer, with the exception of ABC. And two of those exceptions are hotels and restaurants. Why don't those exceptions mean that there is no purpose that the exclusion of churches from principle-permitted uses serves with respect to the Old Town District? Well, with regard to that issue, Your Honor, I think the district court, not a riot, the examples that the court gave that would also be excluded would be clubs, so nightclubs of any sort, the kinds of examples you gave in Knoxville, bars, wine bars, microbreweries, liquor stores, and all other purveyors of alcohol, with the exception of those that are specifically noted in the statute. These are just exactly the kinds of uses that the city is seeking to encourage, specifically on Main Street in the Old Town District, which is really the area that's at issue. One other fundamental issue that I would like to address. What about – and that's because the effect of the church is no nightclubs or brewpubs within 300 feet. Correct, Your Honor. And it's important to remember that this is a strip that is three blocks long, and as indicated in the record, this would wipe out one of those three blocks and the intersection of another. Are there other membership, nonreligious membership organizations that have establishments along this three-block strip? There is a dance hall and a theater. Membership dance hall? Well, they fall within the definition of the membership organization within the statute, yes. Has it been there a long time? In other words, was it in existing use when the Old Town area went in, or has it come in since then? There are two specific examples, the Masonic Temple and the Fraternal Orbiter of the Eagles. The Masonic Temple is within the three-block strip? No, those are not on the Main Street area. All right. Then why couldn't the city just simply amend the ordinance so that all membership organizations would, you know, have to get a conditional use permit? Wouldn't that solve your problem? Well, that would be one way of approaching it, I suppose, Your Honor, and that would perhaps. And then you wouldn't have this, you know, discrimination against, would you, a religious organization? Well, I think what's important, Your Honor, is to determine whether or not this is discrimination against religious organizations. The test of the. . . You don't think facially when the ordinance says membership organizations don't need a use permit except for churches? No, Your Honor. In effect, that's what it says, isn't it? Well, that is what it says, but I guess what I'd like to do is get behind that because all of the courts agree, and specifically the district court outlined, that a reference to religious organizations within an ordinance doesn't necessarily violate our loop. The question is why it differentiates between the two. And it then goes through the analysis and says this is an articulation of the free exercise standard under the Smith-Lukumi line of cases. I really had trouble accepting that. It would mean that the act of Congress is totally surplusage. It's merely PR, and we're supposed to try to interpret statutes as though they do something. There are a couple of reasons why that's not true, Your Honor. The first is that the city of Bourne v. Flores, which was the case that found the Religious Freedom Restoration Act unconstitutional, said that Congress has the power to enforce constitutional rights, but it does not have the power to alter them. And so if the court were or, rather, if Congress were to go beyond that in enforcing those statutes, then it would create a problem. But in addition to that, and this is what the district court pointed out, was that what the primary effect of the equal terms provision was, was with regard to the burden-shifting provision. Well, you're not making a claim in this case that this right loop is unconstitutional, is exceeding the powers of Congress, are you? Well, I think that here's the way to look at that, Your Honor, is that, yes, we do articulate an issue on that. The district court raised the issue, and then we repeat the issue with a little more expansive discussion in our brief. And the reason why is because of the familiar right-for-the-wrong-reasons standard, is that it is not an issue that we presented to the trial court. But avoiding an unconstitutional interpretation, and we articulate why, would be a reason to agree with the district court in this case. One issue I'd like to get to. Oh, go ahead, Your Honor. Why doesn't that language in the statute, on less than equal terms, combined with the language in the ordinance, membership organizations except religious organizations, end the case? The reason why, Your Honor, is as articulated by the district court, is because the reason for the explanation, or rather the reason for the identification of religious organizations, does not violate the concept of neutrality in general applicability. I can't figure out the reason. I mean, you say, well, it excludes group clubs and nightclubs, and that's true, and that is a bit of a problem. But any use excludes some other use, at least on the property where the use is. And I go down the list, a bus station, a post office, a jail, a parking lot, none of them need a conditional use permit. And where there's a parking lot, there's no nightclub. Where there's a post office, there's no group club. I don't get how moving the churches into the conditional use permit section instead of the automatically permitted use serves the purpose of this old town district with an emphasis on tourism and historic preservation, lively pedestrian-oriented district. I don't see where the exclusion of churches has any more use in facilitating the creation of this old town district than any of these other things. Well, the two reasons articulated by the district court are, number one, the liquor license exclusion zone that we talked about, and number two, the kinds of accessory uses that are often used by religious organizations. I didn't understand accessory uses. Maybe I don't have enough familiarity with churches, but it seems like usually there's a church standing there and there's nothing doing at night, and then there are other things around it that aren't churches. There are a number of authorities cited by the district court that the court might find instructive. There are a couple of law review articles and a couple of different cases which get into this issue. Well, why don't you just tell me in English what accessory uses tend to grow up around churches? I'm sorry. It might include a soup kitchen. It might include a homeless shelter. It might include a school, which is exactly in this case was part of the application for the conditional use permit that was put forward. Those are exactly the kinds of issues that may create this incompatible use. And one of the reasons why, and as the district court articulated — But, you see, assuming a church is there or anywhere in the city of Yuma, if a church or any other organization wants to start a school, don't they have to get another permit? It's the exact same permit, Your Honor. It's the conditional — Permit? Pardon me? You say it's the exact same permit? The application, the requirements are the same for a school as they are for a church. Oh, I see. But they'd still need another conditional use permit to open a church school, wouldn't they? Well, it would be the same application with the consideration of the effects of all these. Well, you might open a church in year one, and then you've got enough money and open a school in year 10. There would be two different applications. They'd have to get a conditional use permit for the school, even though they already had the church, right? Yes. One fundamental issue that I think is important here is something that Your Honor identified, which is the question of is this a case purely about which test to apply, the Third Circuit or the Eleventh Circuit, or is there a factual question as to what happens under the Third Circuit test? And I guess the first point that I would make there is that both in oral argument and in the reply brief, the church abandons the Third Circuit application. It says we agree that if the Third Circuit test applies, we lose. And I believe that what the court can and should do with that is to say we can assume without deciding that if this Third Circuit test applies, the church loses. That was their position in the district court? That's the position they've taken on this appeal. But what about in the district court? Did it take that position there, too? No, Your Honor. They argued that this — well, actually, the position they took was that the Eleventh Circuit test applied and that we violated that. There wasn't an argument that I can recall that if the Lighthouse test applied, that they prevailed. Can you help me with something really elementary? I just — when I thought before studying it more closely that no one would be able to sell alcohol within 300 feet of the church, then I thought, well, that would blight the entertainment district because people just aren't going to go to — they'll go to restaurants for lunch that don't have liquor licenses, but it will really cut down on dinner business. But once I saw that restaurants and the hotel could get liquor licenses, I fundamentally don't understand what the problem is with having a church there, along with all the bus stations and parking lots and jails that are allowed. Well, I think — What is the problem? I think to take an important hypothetical would be this, is that the standard that's being articulated is not going to be limited to the city of Yuma. It's going to be the Ninth Circuit. It's going to be affected by this. And so take, for example, downtown Phoenix, where the arena where the Phoenix Suns plays and the Arizona Diamondbacks play. There are theaters within that district. Under their test, a church can locate and you can no longer sell beer at Diamondbacks games. There is a true cultural impact as a result. Oh, no, no, because the Diamondback is an existing use. Grandfathered in. Well, my point is, Your Honor, is that the impacts, the effects that a church can have on the surrounding area, it essentially creates a dead zone. Well, it doesn't squash the surrounding businesses because they get grandfathered in. And as for the dead zone, I agree with you. Churches tend to be dead zones at night, but so do jails and post offices. Well, I think that, again, what's important, Your Honor, is not those particular uses that you're identifying. The question is why, under the free exercise principles that the district court articulate apply here under the Smith-Lacunae line of cases, is why did the city articulate or, rather, identify religious organizations differently than others? And if there is an object to quash the religious, and I guess to quote the language specifically, the court quoting the Lacunae case says, A law is not neutral if the object of the law is to infringe upon or restrict practices because of their religious motivation. And a law is not generally applicable if it, in a selective manner, imposes burdens only on conduct motivated by religious belief. And so the question is, did the city separate out religious organizations because of a desire to restrict their religious activities, or was it because of a neutral, generally applicable reason? And the court articulated the reasons why this was a neutral, generally applicable regulatory purpose apply. What does that mean? Do we have to, like, look into the intent of the city? Yes. That's effectively what happens, and that's what happens in terms of the free exercise analysis. And I guess to take a couple of examples, the Lighthouse case does a really good job going through this, and it gives several examples. Do you mean the majority or the dissent? I'm talking about the majority, Your Honor. The first is that despite what they may argue to you, the plaintiffs won in the Lighthouse case. There were two different issues that were being argued in the Lighthouse case. One was an ordinance that was being challenged that became moot as a result of a change in the statute. And the plaintiffs won on that because the regulatory purpose was not differentiated on the religious issue, but the plan that replaced the ordinance, the court found, had a different religious or had a different purpose that was neutral, Your Honor. I'm out of time. Thank you very much. Thank you, counsel. Thank you. I think the appellant side saved a little bit of time. Before I get into where I'm going to get into, can I ask you, do you agree with your opponent that, in effect, you conceded that if we adopt the Lighthouse test, you lose? We believe the Lighthouse test articulated as it was articulated by the district court that we think we would lose under that test. You did lose, didn't you? Yes, we certainly did lose, as a matter of fact. All right. Thank you. Yes. I think I might have made a mistake on your time. Did you run through it all? I don't. I believe I was going to sit down, but you wanted me to talk. Take 30 seconds anyway. All right. One thing I'll point out then, Your Honor. What really demonstrates and shows that the discrimination here not only, obviously, facially violates Equal Terms of Provision, but that it's a pretext, is because the two regulatory purposes advanced, this concern about accessory uses and this limitation on liquor sales, don't apply, for example, to a religious book club. That would be an assembly, but certainly that's not the type of assembly a book club doesn't beget accessory uses, and nor does Arizona Statute 4-207, the liquor buffer rule, apply to religious organizations like book clubs. It only protects churches. But a religious book club would be denied as-of-right status under this ordinance and would have to apply for a conditional use permit as well. So it really demonstrates that those government interests are a pretext. Thank you. All right. Thank you, counsel. Thank you. We will recess for 10 minutes.
judges: Kleinfeld, Tashima, Thomas